O

# United States District Court
# Central District of California

| UNITED STATES OF AMERICA | Case № 2:19-CR-00737-ODW |
|---|---|
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR TEMPORARY RELEASE FROM DETENTION PURSUANT TO 18 U.S.C. § 3142(i)** |
| vs. | |
| MARIO LOUIS HERNANDEZ, | |
| Defendant. | |

## I. INTRODUCTION

Defendant Hernandez was indicted for possession with intent to distribute controlled substances in violation of 21 U.S.C.§ 841(a)(1), (b)(1)(B)(viii), possession of a firearm in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c), and for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).[DE-10]. His trial is set for February 16, 2021. [DE-24.]

On June 24, 2020 he filed an *ex parte* application to re-open his detention hearing, or in the alternative, to temporarily release him from custody, primarily so that he may meet with his attorney to prepare his defense. [DE-28]. The government has filed an opposition. [DE-29.] The Court has carefully considered both the moving and opposing papers and for the reasons discussed in the government's papers, DENIES both the motion to reopen the detention hearing and the alternative motion for temporary release from custody.

## II.   APPLICABLE LAW

Title 18 U.S.C. 3142(f)(2)(B) provides for re-opening of a detention hearing if the "judicial officer finds that information exists that was not known to the movant at the time of the hearing and **that has a material bearing** on the issue whether there are conditions of release that will reasonably assure that appearance of such person as required and the safety of any other person and the community." (Emphasis added.)

### A.   NO NEW INFORMATION WARRANTS RE-OPENING DETENTION HEARING 3142(F)

The information which was not known at the time of the original detention hearing in November 2019 is the global Coronavirus pandemic. Defendant spends a fair amount of time discussing the incremental increase in infections in his current place of confinement and the difficulty in achieving social distancing while incarcerated. However, he claims to have no comorbidity factors which would make him either more susceptible to contracting the infection or likely to have a worse outcome in the event he was infected. It should be noted that as of June 30, 2020,

only 2 current inmates at the San Bernardino County Central Detention Center are positive for COVID-19, out of a total prison population of 537 inmates. (Exhibit A to Govt. Opp. to Ex parte Application.)  But as of the date of this order, the U. S. Center for Disease Control and Prevention ("CDC") reported that the United States has 4,024,491 cases of COVID-19 and 143,868 resultant deaths.  Per Johns Hopkins University, Los Angeles County has over 166,868 cases and 4,263 COVID-19 related deaths.[1]  And California leads the nation as the state with the most cases and deaths from the virus. Obviously, the problem extends far beyond the walls of the nation's penal institutions.  Being out of custody does not make one immune from infection.

The pertinent inquiry, however, is whether this information has a "material bearing on the issue" whether there are conditions, or combination of conditions which will reasonably assure defendant will not flee before trial, or that there is no longer a concern over the safety of any other person or of the community.  In point of fact, these statistics have nothing to do with the defendant and everything to do with the spread of the pandemic which is currently affecting the entire globe.  As for the issue of whether Hernandez might present a danger to the community – evidence suggests that if released from custody and became infected, it is likely that Hernandez would not abide by the CDC guidelines designed to minimize the likelihood of him transmitting the virus to others in the community.  He finds himself in criminal history category VI which might suggest that historically he has had difficulty conforming his conduct to society's expectations.  Moreover, at the time of the offense on which he is currently incarcerated he was on supervised release. During a traffic stop he was found in possession of methamphetamine and heroin which he indicated he intended to sell. He was also in possession of a loaded firearm,

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; https://coronavirus.jhu.edu/us-map

which, as a felon, he was prohibited from having. In other words, he was unable or unwilling to abide by the conditions the Court imposed on him that he not commit any violations of federal, state or local law or ordinance.  There is no new information that would cause the Court to reverse its initial opinion, that if released, he would endanger the lives of others in the community.

Hernandez was detained pending trial at his initial hearing. The magistrate judge was of the opinion that there were no conditions or combination of conditions which could be imposed that would reasonably assure he would attend all court hearings, nor would he poise a danger to the community. [DE-9] (18 U.S.C.§3142(f).) Therefore, the question is whether the new information would cause the Court to now reach a different conclusion.  The magistrate judge's original "reasons should be taken into consideration in determining whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." *U.S. v. Clark*, --- F.Supp.3d ----2020 WL 1446895,*3 (D.Kansas 2020.)  The Court finds no newly discovered information that has a material bearing on the issue of whether there are conditions of release that will reasonably assure defendant's appearance or the safety of the community.  The only new information the Defendant cites is the pandemic.  Granted, it did not exist in this country at the time of the initial detention hearing, but it is not a fact which has any bearing whatsoever on the relevant question. Therefore, there is no basis under §3142(f) to re-open the detention hearing.  Under the facts of this case, the more salient analysis would be under § 3142 (i).

///

///

### B. INABILITY TO MEET PRIVATELY WITH COUNSEL AND ASSIST IN HIS DEFENSE

If, as he suggests, conditions at the San Bernardino jail make confidential attorney visits or telephone calls impractical or impossible so that he might assist his attorney in preparing his defense, a question of constitutional dimensions is raised. 18 U.S.C.§3142(i) provides in pertinent part: "The judicial officer may, by subsequent order, permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." A defendant bears the burden of establishing circumstances warranting temporary release under provision of Bail Reform Act (BRA) governing temporary release from pretrial detention for preparation of defense or another compelling reason. 18 U.S.C.A. § 3142(i) See *United States v. Terrone*, USDC, --- F.Supp.3d ----2020 WL 1844793 (D. Nevada, April 10, 2020.)

Defendant implies the San Bernardino Sheriff is violating the express terms of the Detention Order signed by Magistrate Judge Gail Standish on November 25, 2019 which states: "The defendant must be afforded a reasonable opportunity for private consultation with defense counsel."  Though Defendant does not expressly allege violation of the literal terms of the detention order, he argues that he must be released because private conversations, either in person, or over the telephone cannot be achieved at the San Bernardino County Central Detention Center ("SBCDC").  As the Court understands the argument, the conditions at the SBCDC where he is presently housed have no accommodations for private attorney – client communications.  The government's opposition, to which is attached the Declaration of Sergeant Helmick, the Administrative Sergeant with the San Bernardino County

Sheriff's Department, assigned to Central Detention Center, paints a different picture.  For example: "Official legal visits are permitted subject to the screening procedures described above.  The Central Detention Center provides private rooms in which the official legal visits are conducted.  These official legal visits are permitted for all inmates, including those on isolation or quarantine status." (see Helmick Decl. ¶ 16).  This declaration demonstrates that defendant is allowed to meet safely with counsel in private and have sensitive conversations without fear of being overheard.  These measures ensure that defendant will retain access to his counsel.  In resolving this disputed issue, the Court gives greater credence to the sworn statement of Sgt. Helmick.  Accordingly, contrary to defendant's assertion, the Bail Reform Act does not require defendant's release to allow for the preparation of his defense. This can be accomplished at his present place of confinement. (See Dkt. No. 28 at 7.)" ( Govt. Opp. DE-29, at p. 16.)

      The Court finds that Defendant has not carried his burden of showing that release, for however long, is necessary to assure that he has adequate time to confer with his counsel and explore trial strategy, plea negotiations, witnesses, needed investigation, etc.

      As noted in section II.A., in considering temporary release under §3142(i) based on circumstances related to COVID-19, it is also appropriate to consider the likelihood the defendant's proposed release plan would increase COVID-19 risks to others, particularly if the defendant is likely to violate conditions of release. *Clark, supra*, —— F.Supp.3d at ——, 2020 WL at 1446895, at *7. A defendant who is unable to comply with conditions of release poses potential risks to his family, pretrial services officers who come into contact with the defendant for supervision, and others if the defendant is taken back into custody. *Id.*  In this case, these

considerations do not support release. The court originally detained Hernandez because he was a risk of flight, facing a significant time in custody and meeting the criteria for the presumption to apply. (3142(e)(3).)  Given the § 3142(f) and (g) considerations discussed previously, the court believes Defendant will likely violate any conditions of release the court may impose if the court were to issue a temporary release order.  Importantly, Defendant has failed to produce new evidence convincingly suggesting otherwise. Defendant  proposes home confinement,  location monitoring, outpatient drug treatment along with any further conditions the court deems appropriate. [DE-28 p. 12.) As another court recently observed, "[w]hile the location monitoring that [defendant] proposed may offer useful information about where he is, it provides little useful information about what he is doing."  That is a salient consideration in this case where defendant was engaged in the sale of controlled substances at the time of his arrest.

### C.  Factors Negating Release Under 18 U.S.C.§ 4142(g)

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

**(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . involves . . . a controlled substance, firearm, explosive, or destructive device;

**(2)** the weight of the evidence against the person;

**(3)** the history and characteristics of the person, including--

**(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

criminal history, and record concerning appearance at court proceedings; and

**(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

**(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

In considering these factors, to the extent the court has knowledge of them, tip the balance strongly in favor of continued detention.  The underlying case is one where the Defendant was caught in possession of heroin and methamphetamine, which he acknowledged he intended to sell "for extra cash."  He was also in possession of a loaded firearm.  Thus, the nature of the crime was serious and represented a danger to the community.

The weight of the evidence would seem compelling.  According to the arresting deputy sheriffs, when Hernandez was stopped for expired registration on his vehicle, he was not in possession of a valid driver's license.  He apparently admitted to the deputies that he had drugs on him.  When asked if there was

anything else in the veh'icle he admitted to having a loaded gun under the driver's seat.  He admitted the drugs were his, but he borrowed the gun from a friend.

As for his history and characteristics, the court does not have the benefit of a Presentence Investigation Report, but the Defendant falls within criminal history category VI.  He was also on supervised release at the time of his arrest.  Plainly he had violated the trust of the court.

In terms of the nature and seriousness of the danger to the community posed by his release, he was engaged in the sale of controlled substances.  Heroin and methamphetamine.  Both of which are especially dangerous and addictive.  Given that he was unemployed since October 2019, he may have incentive to go back to that activity.  Considering his lack of respect for the law, there is also the danger that he will not abide by the CDC guidelines or the California Governor's restrictions on our personal freedom in an effort to slow the spread of the virus of which he complains. That would present a danger to all those with whom he comes in contact. On the issue of the source and nature of collateral to secure his attendance at court, his brother offered to post an unsecured $20,000 bond.  Both the amount of the bond, plus the lack of tangible collateral, offer little comfort that he will not flee.

Thus, considering the totality of the circumstances, there is no justification to order Hernandez' release from custody.  His motion is therefore **DENIED**.

**IT IS SO ORDERED**.

DATED:   July 24, 2020

_____
OTIS D. WRIGHT,II
UNITED STATES DISTRICT JUDGE